UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KUSH MUHAMMAD, ET AL     Plaintiffs

v.     Civil Action No. 3:22-cv-087-RGJ

UNITED STATES, ET AL     Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant United States moves to dismiss Plaintiff Kush Muhammad ("Muhammad") and Intervening Plaintiff Praylon Breed's ("Breed" and collectively, "Plaintiffs") claims against it. [DE 16]. Plaintiffs respond [DE 39], and the United States replied. [DE 40]. This matter is ripe. For the reasons below, the United States' Motion to Dismiss [DE 16] is **GRANTED**.

        **I.**        **BACKGROUND**

On December 8, 2020, the United States Marshal Service ("USMS"),[1] led by Special Deputy United States Marshal Joshua Spaulding ("DUSM Spaulding"), chased Darryl Robinson ("Robinson") in a high-speed vehicle pursuit. [DE 1-1 at 7-12; DE 6-1 at 33-37; DE 16 at 75]. While pursued by USMS and Spaulding, Robinson ultimately ran through a red light at approximately 100 miles per hour and crashed into both Plaintiffs. [DE 1-1 at 12; DE 6-1 at 35].

In January 2022, Muhammed sued Spaulding, Robinson, and Liberty Mutual Personal Insurance Company ("Liberty Mutual") in Kentucky state court for negligence and gross negligence. [DE 1-1 at 6-14].

---

[1] While the Complaint and Intervening Complaint refer to officers of the Louisville Metro Police Department ("LMPD") and alleges that Spaulding was an officer of LMPD, the briefing on Motion to Dismiss agrees that Spaulding and other officers were Deputy United States Marshals from the USMS.

In February 2022, the United States removed the case to this Court under the Federal Tort Claims Act ("FTCA"). [DE 1]. In March 2022, Praylon Breed moved to intervene, with an intervening complaint against the same defendants. [DE 6]. The parties filed a motion and proposed agreed order to substitute the United States for Spaulding, agreeing that Spaulding was acting within the scope of his federal employment at the time of the incident and should be dismissed from this action. [DE 9 at 50]. The parties also agreed that Breed should be allowed to intervene, and the Court granted the motions to substitute and intervene and dismissed Spaulding as a party. [*Id*; DE 10]. Plaintiffs and Liberty Mutual later agreed that the claims against it should be dismissed. [DE 24; DE 25].

The United States now moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. [DE 16]. Plaintiffs responded [DE 39], and the United States replied.[2] [DE 40].

## II.  STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint. Fed. R. Civ. P. 12(b)(1). Generally, Fed. R. Civ. P. 12(b)(1) motions fall into two categories: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the Defendant asserts that the allegations in a Complaint are insufficient on their face to invoke federal jurisdiction. *Id.* By contrast, in a factual attack, the Defendant disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction and the Court is free to weigh the evidence. *Id.* Plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss under Rule 12(b)(1). *Madison-Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996).

---

[2] Robinson has not entered an appearance and is not addressed by either party.

Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990). "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014).

### III.  DISCUSSION

The United States asserts the Court lacks subject matter jurisdiction because the United States' waiver of sovereign immunity under the FTCA "does not extend to liability associated with a federal law enforcement officer's discretionary decision whether or not to engage in a high-speed pursuit of a criminal fugitive." [DE 16 at 74-75]. Defendants argue that the USMS acted in violation of its own policy when it chased Robinson, and thus the discretionary exception does not apply.[3] [DE 39 at 192].

"'The United States, as sovereign, is immune from suit save as it consents to be sued. . .' this principle extends to agencies of the United States as well, which are immune absent a showing of a waiver of sovereign immunity." *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993) (internal citations omitted). As with the burden of establishing subject-matter jurisdiction, it is a plaintiff's burden to: "identify a waiver of sovereign immunity in order to proceed against the United States. If [it] cannot identify a waiver, the claim must be dismissed on jurisdictional

---

[3] Plaintiffs argue that the Court should consider the United States' motion under Fed. R. Civ. P. 12(b)(6) "given the numerous factual allegations which are at issue in this matter." [DE 39 at 190]. However, given Plaintiffs' failure to develop this argument, the Court's adoption of Plaintiffs' agreed facts, and that the issue is one of sovereign immunity and thus subject matter jurisdiction, the Court considers the motion under Fed. R. Civ P. 12(b)(1).

grounds." *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000) (citing *Dalehite v. United States*, 346 U.S. 15, 30 (1953)).

Among the limited waivers of the government's sovereign immunity is the FTCA, which supplies a remedy against the United States for the torts of its officers and employees. *United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA waives the government's sovereign immunity for claims brought against it "for injury or loss of property, or personal injury or death by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b).

However, "[t]he FTCA excludes several types of claims from its waiver of sovereign immunity[.] If a case falls within one of these statutory exceptions, the court lacks subject matter jurisdiction over it." *Wilburn v. United States*, 616 Fed.Appx. 848, 852–53 (6th Cir. 2015) (citing 28 U.S.C. § 2680 and *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984)). One such exception is the "discretionary function" exception. This exempts from the government's waiver of sovereign immunity

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception "is broad in scope and places a 'significant limitation on' the FTCA waiver." *Snyder v. United States*, 590 Fed. App'x 505, 509 (6th Cir. 2014) (quoting *Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004)).

The Sixth Circuit has outlined a two-part test for determining when the discretionary function exception applies.

> First, the conduct must be "discretionary," not "controlled by mandatory statutes or regulations." *United States v. Gaubert*, 499 U.S. 315, 328, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Put differently, the action in question must "involve[ ] an element of judgment or choice," rather than follow a "federal statute, regulation, or

4

> policy specifically prescrib[ing] a course of action" and leaving "the employee[ ] no rightful option but to adhere to the directive." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Second, the exercise of discretion must be "the kind that the discretionary function exception was designed to shield;" *id.*, *i.e.*, it must be "susceptible to policy analysis," *Gaubert*, 499 U.S. at 325. There is a "strong presumption" that the second part of this *Gaubert* test is satisfied if a court concludes that the employee was exercising discretion. *Id.* at 324.

*A.O. Smith Corp. v. United States*, 774 F.3d 359, 364–65 (6th Cir.2014) (brackets in original); *see also Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012). Additionally, "[t]he proper inquiry is whether the challenged actions are 'susceptible to policy analysis,' not whether they were the result of a policy analysis." *Rosebush v. United States*, 119 F.3d 438, 444 (6th Cir. 1997) (quoting *Gaubert*, 499 U.S. at 324-25).

In their analyses, Plaintiffs and the United States agree that the FTCA applies,[4] and that the conduct at issue is the USMS's pre-crash pursuit of Robinson. [DE 16 at 76; DE 39 at 194]. While the United States asserts that the USMS's policy supports the discretionary nature of the challenged conduct, Plaintiffs point to two specific directives in that policy that they argue allowed no judgment or choice. [DE 16 at 82-87; DE 39 at 194-203]. The Court will examine each directive separately.

1. USMS Policy Directive 14.14(F)(1): Pursuit Circumstances

Plaintiffs argue USMS should have been prohibited from initiating the pursuit based on their "pursuit circumstances" policy:

> Pursuit Circumstances: Before engaging in any vehicle pursuit or deciding to continue a pursuit, the DUSM must consider whether the need to immediately apprehend the subject is more important than the risk created by the pursuit and whether the dangers created by the pursuit exceed the danger posed by allowing the

---

[4] The Court also agrees that Plaintiffs' claims fall under the FTCA as it is "the exclusive remedy for suits against the United States or its agencies sounding in tort." *McWhinnie v. United States*, No. 5:06CV-35-R, 2008 WL 2704469, at *3 (W.D. Ky. July 9, 2008), *aff'd*, No. 08-6071, 2009 WL 8764296 (6th Cir. Nov. 25, 2009) (citing 28 U.S.C. § 2679(a)).

5

> perpetrator to escape. Once the DUSM has established that a subject has committed or is about to commit a crime involving death or serious injury, the DUSM must also consider the following factors:

[DE 39 at 196; DE 39-1 at 207-08]. The USMS's policy then enumerates factors to consider, including the condition of USMS's vehicle, the subject's vehicle and severity of the offense, traffic conditions, and several other factors. [DE 39-1 at 2077-08]. Plaintiffs analyze several of these factors and argue that Spaulding should have concluded that each of these factors prohibited pursuing Robinson. [DE 39 at 196-99]. But as the United States points out, the policy "provided factors for Spaulding to consider and balance, but it did not mandate that he act in a particular way." [DE 16 at 85]. The policy "explicitly contemplates an element of choice" rather than laying out a mandatory plan. *Gallegos Reyes v. United States*, No. 5:19-CV-00902-OLG, 2020 WL 248688, at *2 (W.D. Tex. Jan. 15, 2020) (finding border patrol's "Emergency Driving and Vehicular Pursuit Directive" was not mandatory); *A.O. Smith Corp.*, 774 F.3d at 367 ("The operational flexibility needed to assess these factors demonstrates that the Corps has discretion."); *and Almon v. Kilgore*, No. 3:19-CV-0004-GFVT, 2019 WL 1179387, at *4 (E.D. Ky. Mar. 13, 2019) ("the decisions concerning whether to begin, continue, and/or end an emergency pursuit are discretionary acts" under Kentucky law). The conduct at issue—engaging in a pursuit after weighing the factors—was thus discretionary, and the first factor of the discretionary function exception test is met.

Plaintiffs fail to address the policy factor in their briefing. "There is a 'strong presumption' that the second part of [the] *Gaubert* test is satisfied if," as here, "a court concludes that the employee was exercising discretion." *A.O. Smith Corp.*, 774 F.3d at 364–65. When executing a pursuit as they did here, DUSMs must enforce the law while minimizing harm and balancing safety concerns of the public. This decision is at least theoretically susceptible to a social, economic, or

political analysis. *See Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 159 (6th Cir. 2018) (the policy analysis is a "social, economic, or political" one, and "need not have actually occurred," but "rather the decision need only have been theoretically susceptible to policy analysis."). Furthermore, "[t]he law in this circuit is that even the negligent failure of a discretionary government policymaker to consider all relevant aspects of a subject matter under consideration does not vitiate the discretionary character of the decision that is made." *Rosebush v. United States*, 119 F.3d 438, 444 (6th Cir. 1997) (citations omitted). The Court finds that the second factor of the discretionary function exception test is met, as the conduct at issue was susceptible to policy analysis. *See Jude*, 908 F.3d at 161 ("The second *Gaubert* criterion is also satisfied because the [defendant's] decisions . . . were susceptible to policy analysis."); and *Herrera v. United States*, No. 09CV0756 JM WMC, 2010 WL 4236974, at *4 (S.D. Cal. Oct. 21, 2010) (concluding that a similar border patrol pursuit policy was susceptible to a policy analysis "grounded in social, economic, or political concerns"). The discretionary function exception to the FTCA thus applies to this claim. The United States has therefore not waived sovereign immunity, and Plaintiffs may not proceed with this claim.

    2. <u>USMS Policy Directive 14.14(F)(2): Pursuit Initiation</u>

The parties also agree USMS's pursuit initiation policy, USMS Policy Directive 14.14(F)(2), is relevant here, which identifies the:

> Vehicle Pursuit Initiation Criteria: A DUSM may initiate a high-risk vehicle pursuit when each of the following criteria is met:
> a. The DUSM reasonably believes the driver and/or an occupant has committed or is about to commit a crime involving serious injury or death; and
> b. The driver exhibits the intention to avoid arrest by using excessive speed or committing a hazardous moving violation.

[DE 16 at 83-84; DE 16-3 at 187; DE 39 at 194; DE 39-1 at 208]. The policy also states that "all other high-risk vehicle pursuits are prohibited." [DE 16-3 at 185; DE 39-1 at 207].

The Court first notes Plaintiffs' argument that "Kentucky law is clear as to this issue" of what pursuit would be permitted under this policy. [DE 39 at 194-95]. But "whether a particular cause of action constitutes a claim that is excluded from the FTCA is a question of federal law, not state law."[5] *Hudson v. United States*, No. 2:06-CV-01, 2008 WL 517009, at *6 (E.D. Tenn. Feb. 25, 2008). The Court thus will not further consider these irrelevant state law arguments.

Plaintiffs argue that this policy prohibited the initiation of the pursuit, because USMS could not have "believed that Darryl Robinson had committed or was about to commit a crime involving serious injury or death" because USMS "were admittedly pursuing Defendant Robinson for a parole violation or 'absconding.'"[6] [DE 39 at 195]. Robinson, who has a history of committing violent crimes, was considered "armed and dangerous" by USMS when they pursued him. [DE 16-1 at 91].[7] Furthermore, although Plaintiffs argue for a plain reading of the policy, as the United States argues nothing in the policy requires "the basis for the attempted arrest be commission of a crime of violence instead of for a parole violation." [DE 40 at 225]. Nor does the policy set an expiring period after the commission of the crime in which any vehicle pursuit must be executed. The basis for the attempted arrest and the time period after the crime occurred are left to the discretion of the pursuing DUSM and thus the conduct at issue—deciding to initiate a pursuit on these bases—was thus discretionary. *See Milligan v. United States*, No. 3:07-1053, 2009 WL 2905782, at *11 (M.D. Tenn. Sept. 4, 2009), *aff'd*, 670 F.3d 686 (6th Cir. 2012) (granting motion to dismiss where "the officers' conduct in determining the manner in which to obtain the capias pursuant to which Mrs. Milligan was arrested, to investigate the capias and identify the subject of

---

[5] If sovereign immunity has been waived, Courts then "look to the substantive tort law of the state in which the cause of action arose to determine liability and damages." *Huddleston v. United States*, 485 Fed. App'x 744, 745 (6th Cir. 2012).
[6] The parties do not dispute the "excessive speed" factor. [DE 16 at 76, 83-85; DE 39 at 194-98].
[7] Although this fact was not in the Complaint and Intervening Complaint, it is not disputed by Plaintiffs.

that capias, and to execute that capias is discretionary under the first step of the *Gaubert* analysis") (citing *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997) ("We readily conclude that the decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature and involve an element of judgment or choice.")); *and Horta v. Sullivan*, 4 F.3d 2, 21 (1st Cir. 1993) ("A finding of immunity in this case would be consistent with many cases holding that decisions of law enforcement officers, although seemingly "operational" and made in the heat of the moment, fall within the FTCA discretionary function exception.") (collecting cases). The pursuit initiation policy thus meets the discretionary factor of the discretionary function exception test.

Plaintiffs again fail to address the policy factor in their briefing. The Court finds the same analysis and law appliable here as it applied to USMS Policy Directive 14.14(F)(1). The discretionary function exception to the FTCA thus applies to this claim. The United States has therefore not waived sovereign immunity, and Plaintiffs may not proceed with this claim.

### 3. Policy Directive 14.14(E)(1)(a) and Kentucky Law

Plaintiffs also argue that pursuing officers and thus the United States can be held liable for their failure to exercise due regard under Kentucky Law and USMS Policy Directive 14.14(E)(1)(a). [DE 39 at 200-203]. Because the United States has not waived sovereign immunity under the other policies, and Plaintiffs, who bear the burden of establishing waiver, make no argument about immunity under this section, the Court does not consider this argument and to the extent Plaintiffs assert it as a separate claim, the Court dismisses it. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting

*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *see also Singleton v. Astrue*, No. CIV.A. 09-333-GFVT, 2010 WL 6004448, at *3 (E.D. Ky. June 28, 2010), *report and recommendation adopted,* No. CIV. 09-333-GFVT, 2011 WL 843965 (E.D. Ky. Mar. 9, 2011) ("It is well-established that courts are not obligated to consider unsupported arguments inadequately developed in the briefs") (quoting *Lewless v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1049 (6th Cir. 1994) (Table) (internal quotation marks and formatting omitted). *See also Truett v. Bowman*, 288 F. Supp. 2d 909, 911 (W.D. Tenn. 2003) (granting motion to dismiss "predicated upon Defendants inability to demonstrate that sovereign immunity has been waived"); *Black v. Doe*, No. 11-25-DLB-JGW, 2011 WL 1642540, at *3 (E.D. Ky. May 2, 2011) (granting motion to dismiss when plaintiff failed to allege defendant waived sovereign immunity or argued it in briefing); *and Hudson v. United States*, No. 2:06-CV-01, 2008 WL 517009, at *6 (E.D. Tenn. Feb. 25, 2008) ("the question of whether the alleged acts of the Government in this case constitute negligence under [Kentucky] state law is irrelevant if the acts fall within the coverage of one of the FTCA exceptions, depriving the Court of subject matter jurisdiction.").

Thus, as the United States has not waived sovereign immunity over the claims against it, as set forth above, this Court lacks subject matter jurisdiction to hear the claims against the United States. As a result, the Court **GRANTS** the United States' Motion to Dismiss.

4. Supplemental Jurisdiction

Having dismissed the United States, the Court, as is its duty, sua sponte considers its jurisdiction over the remaining defendant, Robinson. *Clarke v. Mindis Metals, Inc.*, 99 F.3d 1138 (6th Cir. 1996). Plaintiffs assert the same claim of negligence and gross negligence, but based in state law, against Robinson. [DE 1-1; DE 6-6].

The statutory basis for this court's supplemental jurisdiction over state-law claims is set forth in 28 U.S.C.A. § 1367.  "[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction."  *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999).  Section 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over related state claims if "the district court has dismissed all claims over which it has original jurisdiction."  When deciding to exercise supplemental jurisdiction, a court should consider the "values of judicial economy, convenience, fairness, and comity."  *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  The balance of these interests supports declining supplemental jurisdiction.  *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), *amended on denial of reh'g,* No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]"); *see also Cirasuola v. Westrin*, 124 F.3d 196 (6th Cir. 1997); *and Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) ("Generally, if the federal claims are dismissed before trial the state claims should be dismissed as well." (internal citations omitted)).  The Court declines to exercise supplemental jurisdiction.  Therefore, Plaintiffs' claims against Defendant Robinson are **REMANDED** to Jefferson Circuit Court.

## IV. CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) The United States' Motion to Dismiss [DE 16] is **GRANTED;**

(2) The remainder of this case is **REMANDED** to Jefferson Circuit Court;

(3) This matter is **STRICKEN** from the Court's active docket.

*Rebecca Grady Jennings, District Judge*
*United States District Court*

February 9, 2023

Cc:  Counsel of record
     Jefferson Circuit Court